UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
HUMBERTO RIVERA, JR.,                          :
                          Plaintiff,           :
v.                                             :
                                               :
PUTNAM COUNTY; SHERIFF ROBERT L.               :          **OPINION AND ORDER**
LANGLEY, in his official and individual        :
capacities; DEPUTY SHERIFF THOMAS              :          22 CV 1877 (VB)
VARBERO, in his official and individual        :
capacities; and DEPUTY SHERIFF SCOTT E.        :
LOMBARDO, in his official and individual       :
capacities,                                    :
                          Defendants.          :
-------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Humberto Rivera, Jr., proceeding pro se, brings this action against defendants

Putnam County and three members of the Putnam County Sheriff's Office ("PCSO"):  Sheriff

Robert L. Langley, Deputy Sheriff Thomas Varbero, and Deputy Sheriff Scott E. Lombardo.

Plaintiff alleges Deputy Varbero and other law enforcement officers unlawfully entered and

searched plaintiff's home, detained plaintiff there, and facilitated the removal of plaintiff's

daughter from the home, in violation of plaintiff's constitutional rights and state law.  Plaintiff

also alleges defendants attempted to conceal these violations by preparing a false incident report

and then denying his request for a copy of the report.

        Now pending is defendants' motion to dismiss the amended complaint, in part, under

Rule 12(b)(6).[1]  (Doc. #25).

_____

[1]        Although defendants' motion purports to seek dismissal of the amended complaint in its
entirety, their moving papers do not address plaintiff's Fourteenth Amendment substantive and
procedural due process claims against Deputy Varbero.  (See Doc. #23 ("Am. Compl.") ¶ 61
(claiming plaintiff's "due process rights" were violated "where there was no such criminal
investigation neither before nor after the removal of" plaintiff's daughter from his home); id. ¶
19).  And although plaintiff's allegations in Paragraph 61 of the amended complaint are in a

For the following reasons, defendants' motion is GRANTED IN PART and DENIED IN PART.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and certain factual allegations in plaintiff's opposition, and draws all reasonable inferences in plaintiff's favor, as summarized below.[2]

On March 2, 2019, Deputy Varbero and other PCSO officers were dispatched to plaintiff's home in response to a call from Wendy Cotte, the mother of plaintiff's eight-year-old daughter (the "Daughter"). (Opp. at 2). According to an incident report prepared by Deputy Varbero on March 3, 2019, and approved by Deputy Lombardo on March 14, 2019, Cotte asked police to check on the Daughter, who had purportedly told Cotte "she was feeling unsafe with her father . . . because he had been drinking alcohol." (Doc. #27-2 ("Incident Report") at ECF

---

section directed at Sheriff Langley (not Deputy Varbero), in his opposition, plaintiff addresses his due process claim in a section entitled, "Plaintiff Has Stated a Fourteenth Amendment Claim Against Deputy Varbero." (Doc. #28 ("Opp.") at 7). Defendants' reply does not respond to plaintiff's argument that he "adequately pled that his Fourteenth Amendment substantive and procedural Due Process rights were violated when his daughter was unlawfully removed from his custody." (Id.). Accordingly, the Court construes the amended complaint to assert due process claims only against Deputy Varbero (not Sheriff Langley), which may proceed.

[2] Because plaintiff is proceeding pro se, the Court considers new allegations in the opposition, to the extent they are consistent with the complaint. See Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016).

Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

5).[3]  However, plaintiff alleges he was "not intoxicated, incapacitated, a threat to the safety of himself or others, or disorderly."  (Am. Compl. ¶ 10).  Further, he contends Cotte's call was "baseless" and "PCSO was or should have been aware" it was baseless, as PCSO had previously "fielded many baseless welfare check requests from Cotte, made as a means to harass" plaintiff.  (Opp. at 4).

Between 11:40 and 11:45 p.m., PCSO officers arrived at plaintiff's home and Deputy Varbero allegedly spoke with members of the New Fairfield, Connecticut Police Department ("NFPD"), who were also dispatched.  Plaintiff alleges he told NFPD that Cotte's call was not truly "about the welfare of their daughter, but rather about the co-parenting agreement between" plaintiff and Cotte, and that NFPD communicated this to Varbero and other PCSO officers upon their arrival.  (Opp. at 4).  Further, plaintiff claims "Varbero and the PCSO conclusively knew that Plaintiff's daughter was not in the house because they had seen Plaintiff's daughter outside the house and had spoken with the NFPD, who had removed Plaintiff's daughter from the house."  (Id. at 6).

Next, Deputy Varbero and PCSO officers allegedly entered plaintiff's home without his consent, walked directly to plaintiff's bedroom, and began questioning plaintiff's fiancée.  According to plaintiff, Deputy Varbero remained in the bedroom for five minutes and then ordered plaintiff's fiancée and their one-year-old son to leave the room.  Plaintiff alleges Deputy

---

[3]    Because the Incident Report is integral to the amended complaint and plaintiff cites it in the opposition, the Court considers it in ruling on the motion to dismiss.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  However, to the extent plaintiff disputes the accuracy of statements in the Incident Report (see, e.g., Am. Compl. ¶¶ 35–37, 44–48; Opp. at 7), the Court does not accept such statements as true.

"ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Varbero refused to answer his questions about the Daughter's location and threatened to harm plaintiff if he continued asking questions.  In particular, Varbero purportedly shouted to plaintiff "Shut up or you're gonna end up in the hospital!"  (Am. Compl. ¶ 25).

Plaintiff alleges Varbero and PCSO officers then exited plaintiff's home to speak with the Daughter and Cotte.  At this point, Deputy Varbero allegedly locked plaintiff and his fiancée inside the home and prevented them from exiting.  Further, plaintiff contends Varbero and PCSO permitted Cotte to leave with the Daughter in violation of their court-ordered custody agreement. Plaintiff alleges Varbero remained at the home until about 12:15 or 12:20 a.m. on March 3, 2019.

Later that day, Deputy Varbero prepared the Incident Report, allegedly including incorrect information to "create pre text for constitutional violations."  (Opp. at 7).  For example, plaintiff alleges the Incident Report falsely stated plaintiff was intoxicated, fails to mention Varbero or other PCSO officers entered his home, and does not accurately reflect the time of the incident, among other "discrepancies."  (Am. Compl. ¶¶ 44, 46–48).  Plaintiff contends Deputy Lombardo approved the "false information on the report . . . to cover up" the alleged constitutional violations.  (Id. ¶ 45).

Further, plaintiff alleges Sheriff Langley improperly denied his request pursuant to New York's Freedom of Information Law ("FOIL") for the Incident Report.  Langley purportedly told plaintiff he could not complete the FOIL request because the Incident was under criminal investigation.  According to plaintiff, no such investigation existed.  However, plaintiff

ultimately obtained the Incident Report by submitting a second FOIL request via email, which

was answered by a different PCSO employee.

**DISCUSSION**

I.    Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678;

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to

raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  Applying the pleading rules

permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights

violations.  Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a

pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111.  "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint."  Id.  "However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  Id.

II.     Fourth Amendment Claims Against Deputy Varbero

Plaintiff alleges Deputy Varbero violated his Fourth Amendment rights by unlawfully (i) entering and searching plaintiff's home, and (ii) detaining plaintiff within his home.

Defendants argue plaintiff fails to state Fourth Amendment claims against Deputy Varbero because officers had probable cause and plaintiff was never arrested.

The Court disagrees.

A.      Unlawful Search Claim

1.      Legal Standard

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, prohibits "unreasonable searches" of the home by law enforcement.  U.S. Const. amend. IV.

Under the Fourth Amendment, warrantless searches and seizures inside a home are "presumptively unreasonable."  Payton v. New York, 445 U.S. 573, 586 (1980).

However, "[t]he Fourth Amendment does not require law enforcement to obtain a warrant to search a home if exigent circumstances exist, including the need to assist persons who are seriously injured or are threatened with imminent injury."  United States v. Laurent, 33 F.4th 63, 95 (2d Cir. 2022), cert. denied, Laurent v. United States, 143 S. Ct. 394 (2022).  To determine whether exigent circumstances existed, "the core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe that there was an urgent need to render aid or take action."  Id.

>    2.    Analysis

Plaintiff alleges Deputy Varbero unlawfully searched his home without consent even though he and PCSO officers "conclusively knew that Plaintiff's daughter was not in the house because they had seen Plaintiff's daughter outside the house and had spoken with NFPD, who had removed Plaintiff's daughter from the house."  (Opp. at 6).

As an initial matter, despite contradictory allegations in plaintiff's complaint and opposition, drawing all reasonable inferences in plaintiff's favor, the Court construes plaintiff to contend the Daughter was outside of plaintiff's home when Deputy Varbero entered it.[4]  Further, the Incident Report states Varbero responded to Cotte's 911 call, which relayed the minor

---

[4]    Although some allegations in the amended complaint suggest Varbero entered the home while the Daughter was still inside (see, e.g., Am. Compl. ¶¶ 23, 61), the Court "need not feel constrained to accept as truth" plaintiff's conflicting allegations.  See In re Livent, Inc. Noteholders Secs. Litig., 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2011) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.").

Daughter's purported statement that she "felt unsafe" in plaintiff's home because he had allegedly been drinking—which plaintiff disputes.  (Incident Report at ECF 5).  Even if the Court were to accept this statement in the Incident Report as true, Cotte's call would not provide Deputy Varbero with an objectively reasonable belief that plaintiff's daughter was in "urgent need . . . [of] aid."  Chamberlain v. City of White Plains, 960 F.3d 100, 106 (2d Cir. 2020).  And when Varbero and PCSO officers arrived at the scene, they allegedly saw the Daughter outside the home and "had spoken with the NFPD, who had removed" her from the house.  (Opp. at 6).

In the context of child safety, "[r]isks that a child will suffer actual injury, sexual abuse, or be left bereft of care and supervision can suffice to create an emergency."  E.D. ex rel. V.D. v. Tuffarelli, 692 F. Supp. 2d 347, 361 (S.D.N.Y. 2010), aff'd sub nom. E.D. ex rel. Demtchenko v. Tuffarelli, 408 F. App'x 448 (2d Cir. 2011) (summary order).  However, "the mere possibility of danger does not make it objectively reasonable to believe that the circumstances were exigent."  Rivera v. Leto, 2008 WL 5062103, at *4 (S.D.N.Y. Nov. 25, 2008) (quoting Hurlman v. Rice, 927 F.2d 74, 81 (2d Cir. 1991)) (emphasis added).  Unlike a credible report that a child is "unsupervised and injured" in a home, see Bey v. La Casse, 2021 WL 1143690, at *6 (S.D.N.Y. Mar. 22, 2021), a report that a child feels unsafe with her father (absent more detail) does not give rise to a reasonable belief that the child is "seriously injured or threatened with . . . injury."  Brigham City v. Stuart, 547 U.S. 398, 403 (2006).[5]  This is especially true in light of the "heavy burden" on police seeking "to justify a warrantless entry on the basis of exigent circumstances," Chamberlain v. City of White Plains, 960 F.3d at 106 (quoting Welsh v. Wisconsin, 466 U.S.

---

[5]      Moreover, at this stage, the Court cannot even credit the statement that the Daughter was feeling unsafe, as reported in the Incident Report, because plaintiff alleges Cotte made a baseless call to harass him and Varbero falsified the Incident Report to create a pretext for his allegedly unlawful conduct.

740, 749–50 (1984)), and the allegation that the Daughter was already outside when Varbero

entered the home to search it.  See Penree by Penree v. City of Utica, N.Y., 694 F. App'x 30, 33

(2d Cir. 2017) (summary order) (no exigent circumstances where plaintiff's children were

outside the home "so officers could see that the children were not in danger or in need of aid").

Accordingly, plaintiff's Fourth Amendment claim against Deputy Varbero based on an

allegedly unconstitutional search of his home may proceed.

B.    Unlawful Seizure Claim

1.    Legal Standard

The Fourth Amendment, which applies to the states through the Fourteenth Amendment,

prohibits "unreasonable . . . seizures."  U.S. Const. amend. IV.

"[T]he first step in any Fourth Amendment claim (or, as in this case, any section 1983

claim predicated on the Fourth Amendment) is to determine whether there has been a

constitutionally cognizable seizure." Medeiros v. O'Connell, 150 F.3d 164, 167 (2d Cir. 1998).

A Fourth Amendment "seizure" occurs when police detain an individual under circumstances in

which a reasonable person would believe he or she is not "free to leave." United States v.

Mendenhall, 446 U.S. 544, 554 (1980).

Moreover, for a plaintiff to allege a cognizable seizure, the plaintiff must allege the

officer intended to restrain that individual. Medeiros v. O'Connell, 150 F.3d at 168.  For

example, a bystander who was accidentally shot by a police officer when the officer was

struggling with a suspect was not "seized" within the meaning of the Fourth Amendment. See,

e.g., Pickering v. Mercado, 2006 WL 1026677, at **5–7 (E.D.N.Y. Apr. 17, 2006).

If there was a seizure, the Court proceeds to the second step, which is to determine what

type of seizure occurred.  There are two relevant types of seizures, each of which requires a

different level of justification:  (i) an investigatory (or <u>Terry</u>) stop, which must be based on "a

reasonable suspicion supported by articulable facts that criminal activity may be afoot"; and (ii)

an arrest, which must be based on probable cause.  <u>United States v. Glover</u>, 957 F.2d 1004, 1008

(2d Cir. 1992) (quoting <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989)).

"Whether a seizure is an arrest or a merely an investigatory detention, depends on the

reasonableness of the level of intrusion under the totality of the circumstances."  <u>Posr v. Doherty</u>,

944 F.2d 91, 98 (2d Cir. 1991).  "As the level of intrusiveness rises, . . . an encounter between

the police and a citizen is more properly categorized as an arrest."  <u>Id</u>.  When evaluating whether

a <u>Terry</u> stop is sufficiently intrusive to become a <u>de facto</u> arrest:

> the Second Circuit considers the amount of force used by the police, the need for
> such force, and the extent to which an individual's freedom of movement was
> restrained, and in particular such factors as the number of agents involved, whether
> the target of the stop was suspected of being armed, the duration of the stop, and
> the physical treatment of the suspect, including whether or not handcuffs were used.

<u>United States v. Wiggan</u>, 530 F. App'x 51, 55 (2d Cir. 2012) (summary order).

2.    <u>Analysis</u>

First, plaintiff adequately alleges Deputy Varbero seized him by preventing plaintiff from

exiting his home.  "The proper inquiry is whether a reasonable person would feel free to decline

the officers' requests or otherwise terminate the encounter."  <u>United States v. Drayton</u>, 536 U.S.

194, 202 (2002).  Here, plaintiff alleges Varbero refused to let plaintiff and his fiancée see the

Daughter, and Varbero "locked the front door to prevent" plaintiff and his fiancée from leaving

their home.  (Opp. at 3).  Plaintiff further alleges "[a]fter trapping Plaintiff and his fiancée in

their home, Varbero went out" to speak with Cotte, "holding the door shut to further prevent

Plaintiff from leaving."  (<u>Id</u>.).  Inside the home, Varbero also allegedly "forcefully order[ed]

plaintiff" to comply with his orders, including threatening plaintiff with harm by "shouting 'Shut

up or you're gonna end up in the hospital!'"  (Am. Compl. ¶¶ 22, 25).  In totality, plaintiff has

plausibly alleged a reasonable person in his position would not have felt free to leave the home,

and thus, he was seized.

However, plaintiff's allegations do not support a claim of de facto arrest.  First, according

to plaintiff's allegations, his seizure could not have lasted for more than forty minutes.  (See Am.

Compl. ¶ 9 (alleging Varbero was present at plaintiff's home from "March 2nd, 2019 at or about

11:40–11:45 PM through March 3rd, 2019 at or about 12:15–12:20 AM")). This short duration,

as well as the lack of allegations that plaintiff was handcuffed or that Varbero brandished a gun

at him, strongly weigh against a finding of de facto arrest.  See, e.g., United States v. Stambler,

629 F. App'x 104, 108 (2d Cir. 2015) (summary order) (finding a stop was not a de facto arrest

where officer questioned individual for approximately thirty minutes "[w]ithout brandishing a

gun or handcuffing" him).  And plaintiff does not allege Varbero or other officers "unnecessarily

delayed their investigation" at plaintiff's home.  Id.  Moreover, although other officers may have

been present, plaintiff alleges that only Varbero "unlawfully detain[ed] him against his will."

(Am. Compl. ¶ 29).  See United States v. Patterson, 25 F.4th 123, 141 (2d Cir. 2022) (noting the

importance of the number of agents involved).

Drawing all reasonable inferences in plaintiff's favor, Varbero's detention of plaintiff

was a Terry stop requiring reasonable suspicion.  A determination of reasonable suspicion

depends on the totality of circumstances "through the eyes of a reasonable and cautious police

officer on the scene, guided by his experience and training."  United States v. Padilla, 548 F.3d

179, 187 (2008).  Further, a "determination of reasonable suspicion must be based on

commonsense judgments and inferences about human behavior."  Illinois v. Wardlow, 528 U.S.

119, 125 (2000).  Reasonable suspicion, unlike probable cause, can even be based on "conduct

that is as consistent with innocence as with guilt."  United States v. Padilla, 548 F.3d at 187.

Plaintiff has sufficiently alleged Varbero's Terry stop of plaintiff was not based on

reasonable suspicion.  Plaintiff alleges he was not intoxicated and that PCSO should have known

Cotte's call was unfounded because she had previously requested that PCSO conduct welfare

checks at plaintiff's home to "harass" him.  (Opp. at 4).  Although the Incident Report states

police were dispatched in response to a call stating the Daughter felt unsafe with plaintiff

because he had been drinking alcohol and, upon speaking with plaintiff, Varbero believed

plaintiff was intoxicated (Incident Report at 5), at this stage, in light of plaintiff's allegations that

the Incident Report contains false statements, the Court cannot credit the Incident Report's

statements as true.

Accordingly, plaintiff's Fourth Amendment claim against Deputy Varbero based on his

allegedly unconstitutional detention may proceed.

III.     Equal Protection Claim Against Sheriff Varbero

Defendant Varbero argues plaintiff fails to state an equal protection claim because he

does not allege Varbero acted with discriminatory intent.

The Court agrees.

A.     Legal Standard

The Constitution's "equal protection clause directs state actors to treat similarly situated

people alike."  Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).  To state a claim under

the Equal Protection Clause, a plaintiff must plausibly allege "compared with others similarly

situated, [he] was selectively treated; and . . . that such selective treatment was based on

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person."  LeClair v. Saunders, 627 F.2d 606, 609–10 (2d Cir. 1980).

      B.     Analysis

      Plaintiff contends Deputy Varbero's alleged conduct was motivated by a bias against plaintiff's status as a "male hispanic father."  (Opp. at 7).  Specifically, plaintiff alleges "the warrantless search and seizure of [plaintiff], [plaintiff's] daughter and family wasn't based on empirical facts but rather subjective feelings that favored the caller as a female violating the male hispanic father's rights to equal protection and due process of law."  (Id. at 7–8).  Thus, plaintiff contends Varbero discriminated against him on the basis of his sex, ethnicity, and his status as a father.

      However, "well-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential component of such a claim and conclusory allegations of selective treatment are insufficient to state an equal protection claim."  Panzella v. City of Newburgh, 231 F. Supp. 3d 1, 8 (S.D.N.Y. 2017) (dismissing complaint where plaintiff failed to identify similarly situated entities or how they were treated better), aff'd 705 F. App'x 50 (2d Cir. 2017) (summary order).  Here, plaintiff's amended complaint and opposition are "completely devoid of any reference to 'similarly situated' or 'substantially similar' individuals."  Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013).  Thus, his allegations are not sufficient to support an equal protection claim.  And, to the extent that

plaintiff attempts to plead that his daughter's mother was treated more favorably, plaintiff's allegations are conclusory and do not explain any purported disparate treatment by Varbero.

Accordingly, plaintiff's equal protection claim against Varbero must be dismissed.

## IV.   Defendants Langley and Lombardo

Defendants argue plaintiff's Fourth and Fourteenth Amendment claims against Sheriff Langley and Deputy Lombardo must be dismissed because plaintiff has failed to plead their personal involvement in an alleged constitutional violation.

The Court agrees.

### A.   Legal Standard

To state a claim under Section 1983, a plaintiff must allege facts showing defendants' direct and personal involvement in an alleged constitutional deprivation.  See Spavone v. N.Y.S. Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  Therefore, to state a claim under Section 1983 against government officials, "a plaintiff must plead . . . that each Government-official defendant, through the official's own actions, has violated the constitution."  Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020).

A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights.  Ashcroft v. Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); Tangreti v. Bachmann, 983 F.3d 609, 619–20 (2d Cir. 2020).

14

B.      Sheriff Langley

Plaintiff has not alleged Sheriff Langley was personally involved in the alleged unlawful search and seizure or due process violations.  Instead, plaintiff claims Sheriff Langley "denied" plaintiff's FOIL request "for the police report through conventional mail to cover up the constitutional violations imposed" on plaintiff, although another PCSO employee subsequently emailed the Incident Report to plaintiff.  (Am. Compl. ¶¶ 59–60).

Even if plaintiff is correct that Sheriff Langley refused to provide plaintiff the Incident Report in response to his FOIL request, "there is no violation of a federal constitutional or statutory right from a municipality's inadequate response to a FOIL request." Hudson v. Cnty. of Dutchess, 51 F. Supp. 3d 357, 370–71 (S.D.N.Y. 2014) (collecting cases).  "Instead, an allegedly wrongful denial of a FOIL request is a matter of state law that is to be addressed in an Article 78 proceeding." Id. at 371.  Here, plaintiff has not alleged he pursued an Article 78 proceeding to address Sheriff Langley's alleged denial of plaintiff's FOIL request.

Accordingly, plaintiff's claim against Sheriff Langley must be dismissed.

C.      Deputy Lombardo

Plaintiff also has not alleged Deputy Lombardo was personally involved in the purported unlawful search and seizure or due process violations.  Rather, plaintiff alleges Deputy Lombardo was the "reviewing officer" who approved the Incident Report on March 14, 2019.  (Am. Compl. ¶ 41).  In doing so, Deputy Lombardo allegedly "approved false information on the report"—including an incorrect birthday for the Daughter, a false statement that officers did not enter plaintiff's home, an inaccurate time of the conclusion of PCSO's visit, and an incorrect statement that plaintiff was intoxicated —"to cover up the constitutional violations against" plaintiff.  (Id. ¶¶ 42–47; Opp. at 3).

However, even if the Report contains false allegations, "the mere filing of a false, misleading, or incomplete police report, without more, does not create a cause of action in damages under section 1983." Peralta v. City of New York, 2023 WL 1823447, at *3 (S.D.N.Y. Feb. 6, 2023) (plaintiff "does not state a due process claim under Section 1983" where plaintiff's allegations "do not give rise to a constitutional claim, because he has no entitlement under the Constitution to a police report"); see also Smith v. Patri, 99 F. App'x 497, 498 (5th Cir. 2004) (per curiam) ("[T]here is no right to a completely accurate police report."); Landrigan v. City of Warwick, 526 F.2d 736, 744 (1st Cir. 1980) ("For purposes of recovering damages [under Section 1983] at least, we do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and laws.").

Although plaintiff alleges the existence of an Incident Report containing false statements, he does not allege any further action was taken based on the Incident Report, or that the Incident Report was disseminated. Nor does he plausibly allege that Lombardo participated in any other purportedly unconstitutional conduct. Plaintiff alleges it was "unclear" whether Deputy Lombardo "was within the curtilage of" plaintiff's home at the time of the incident. (Am. Compl. ¶ 47). Further, despite plaintiff's contention that Deputy Lombardo "conspired with Deputy Varbero and Sheriff Langley" by approving the Incident Report (Opp. at 9), the amended complaint and opposition lack well-pleaded factual allegations substantiating this conspiracy claim. "And, a complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997).

Accordingly, plaintiff's claims against Deputy Lombardo must be dismissed.

V.    <u>Section 1983 Claims Against the County</u>

The County argues plaintiff's Section 1983 claims against it must be dismissed because plaintiff fails plausibly to allege the requirements of <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) ("<u>Monell</u>").

The Court agrees.

A.    <u>Legal Standard</u>

Under <u>Monell</u>, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." 436 U.S. at 694. Thus, to assert a Section 1983 claim against a municipality, the plaintiff must show the existence of an official policy or custom causing injury and a direct causal connection between the policy or custom and the deprivation of a constitutional right. <u>Jones v. Town of East Haven</u>, 691 F.3d 72, 80–81 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:  (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." <u>Brandon v. City of New York</u>, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

To adequately plead a policy or custom, a plaintiff must allege more than one instance of a constitutional violation.  See DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.").  A plaintiff typically must also adequately plead similar incidents involving others.  See, e.g., Iacovangelo v. Corr. Med. Care, Inc., 624 F. App'x 10, 14 (2d Cir. 2015) (summary order) (affirming dismissal of Monell claim and noting, "other than the plaintiff, the amended complaint provides only one additional example of a similar incident").

Moreover, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983."  Cash. v. Cnty. of Erie, 654 F.3d 324, 334 (2d Cir. 2011).

"Where, however, [Monell] liability is premised on the policymaker's approval of a subordinate's unlawful act, it must be shown that the policymaker ratified the subordinate's decision and the basis for it, as municipalities cannot be liable on a theory of respondeat superior."  Davis v. City of New York, 75 F. App'x 827, 829 (2d Cir. 2003) (summary order).  Further, "there must be well-pleaded allegations in the complaint supporting the inference that the [municipality] employed a policy of ratifying the unlawful conduct of its officers:  a single instance of ratification is insufficient."  Wilson v. Cnty. of Ulster, 2022 WL 813958, at *16 (N.D.N.Y. Mar. 17, 2022).

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), such claims nevertheless must meet the plausibility requirements of" Bell Atlantic Corp. v. Twombly, 550 U.S. at 572, and Ashcroft v. Iqbal, 556 U.S. at 678.  See

Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (quoting

Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit, 507 U.S. 163, 168

(1993)).  "In other words, boilerplate allegations will not suffice."  Id.  "The allegations that [a

defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are

plainly insufficient."  Missel v. Cnty. of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009)

(summary order).

      B.    Analysis

      Here, plaintiff claims the County "developed and maintained customs or policies

exhibiting deliberate indifference to the constitutional rights of persons in Putnam County . . .

which caused the violation of" his rights.  (Am. Compl. ¶ 68).  Specifically, plaintiff points to

alleged County customs or policies to:  (i) "fail to exercise reasonable care in hiring its police

officers, including Defendant deputy Sheriff Varbero thereby failing to adequately prevent

constitutional violations on the part of its deputy sheriffs"; (ii) "inadequately supervise and train

its police officers, including" Langley, Lombardo, and Varbero, and "thereby failing to

adequately discourage further constitutional violations on the part of its deputy sheriffs"; and (iii)

fail to enforce the PCSO policy manual.  (Id. ¶¶ 69–70, 76).  Plaintiff also alleges the individual

defendants did not follow the PCSO policy manual and violated several standards of conduct, for

example by "unauthorized or unlawful threatening or attempting to inflict unlawful bodily harm

on another" and failing to "take disciplinary action when unsatisfactory work was performed."

(Id. ¶¶ 73–75).  Based on the County's purported customs and policies, the individual defendants

allegedly believed their "actions would not be properly monitored by supervisory officers and

that misconduct would not be investigated or sanctioned, but would be tolerated."  (Id. ¶ 71).

Regarding the County's alleged custom and policy of failing to exercise reasonable care in hiring officers and thereby failing to prevent officers from violating the Constitution, plaintiff asserts only conclusory allegations.  Such allegations do not "challenge an express rule or regulation" or a practice "so persistent or widespread as to constitute a custom or usage," and thus, they are insufficient to plead the County is liable under Monell.  See Green v. Dep't of Educ. of the City of N.Y., 16 F.4th 1070, 1077 (2d Cir. 2021) ("[A] general and conclusory allegation of a municipal policy or custom fails to state a plausible claim.").  Moreover, plaintiff's "allegations in this regard are only of his own experience," and do not support "the existence of a municipal policy or practice."  Fuentes v. Schemmer, 2023 WL 188739, at *14 (S.D.N.Y. Jan. 13, 2023); see Smith v. Westchester Cnty., 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing Monell claim where plaintiff's complaint "describe[d] only his own experiences").

Likewise, plaintiff's allegations that the County failed adequately to train and supervise officers and acted with deliberate indifference to citizens' rights are "boilerplate assertions" which do not "allege a specific deficiency in the municipality's training," and thus are insufficient to state a claim for municipal liability.  See Rivera v. Westchester Cnty., 488 F. Supp. 3d 70, 78 (S.D.N.Y. 2020).

As to the County's purported failure to enforce the PCSO policy manual and discipline officers, plaintiff alleges the individual defendants "failed to act pursuant to an expressly adopted official Policy Manual for the Putnam County Sheriff's Office including but not limited to 320.5.8 PERFORMANCE 320.5.9 CONDUCT or a widespread or longstanding practice or custom of the defendant Putnam County."  (Opp. at 9).  "[T]o establish Monell liability based upon a 'persistent and widespread' practice by a subordinate municipal employee (or employees)

other than a policymaker, the employee's unconstitutional conduct must be so manifest as to imply the constructive acquiescence of senior policy-making officials." Lucente v. Cnty. of Suffolk, 980 F.3d 284, 297–98 (2d Cir. 2020). "In other words, there must be sufficient instances of tolerant awareness by supervisors of abusive conduct to support an inference that they had a policy, custom or usage of acquiescence in such abuse." Id. at 298. Here, plaintiff fails plausibly to allege other instances of officers violating individuals' constitutional rights such that the County could be liable for its purported failure to enforce the PCSO policy manual.

In addition, to the extent plaintiff relies on the County's alleged deliberate indifference, plaintiff does not reference any policymaking officials or identify any specific policymakers. However, drawing all reasonable inferences in plaintiff's favor, it is possible Sheriff Langley could be considered a policymaker. See, e.g., Pangburn v. Culbertson, 200 F.3d 65, 71 (2d Cir. 1999) (recognizing plaintiff "might be able to show that [a] Sheriff . . . was a County policymaker"). Regardless, plaintiff cannot state a Monell claim based on this theory because he "makes no concrete allegations as to the deliberate indifference of any policymaking official." Shaheed v. City of New York, 2017 WL 3055040, at *8 (S.D.N.Y. July 17, 2017). Rather, all of plaintiff's allegations regarding deliberate indifference are conclusory and insufficient to state a claim. See Canner v. City of Long Beach, 2014 WL 2862791, at *11 (E.D.N.Y. June 23, 2014) (dismissing Monell claim because "plaintiffs' allegations of 'a failure by official policymakers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact' are nothing more than conclusory"), mot. for reconsideration granted on other grounds, 2015 WL 590270 (E.D.N.Y. Feb. 11, 2015). Moreover, as discussed in Section III.B. supra, plaintiff has not alleged any facts "indicat[ing] a deliberate choice by" Sheriff Langley, a "municipal

policymaker[] to engage in unconstitutional conduct." See Araujo v. City of New York, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010).

Finally, to the extent plaintiff attempts to plead the County's Section 1983 liability based on respondeat superior, municipalities cannot be held liable on such a theory. Davis v. City of New York, 75 F. App'x at 829.

Accordingly, plaintiff's Section 1983 claims against the County must be dismissed.

VI.    State Law Claims Against the County and Deputy Varbero

Defendants argue plaintiff's state-law claims for assault, false imprisonment, and NIED are untimely and must be dismissed.

The Court agrees.

Pursuant to N.Y. General Municipal Law § 50-i, tort claims against municipalities and their employees are subject to a limitations period of one year and ninety days. See Wilburn v. City of Albany, 2014 WL 2532477, at *2 (N.D.N.Y. June 5, 2014) (involving NIED and recognizing, "provisions of N.Y. Gen. Mun. Law § 50–i apply not only to claims against municipalities, but also to suits against officers, agents, or employees whose conduct caused the alleged injury"); see also Falls v. Orange Cnty., 2018 WL 718417, at *2 n.3 (S.D.N.Y. Feb. 5, 2018) (false imprisonment); Lawrence v. City of Rochester, 2015 WL 510048, at *2 (W.D.N.Y. Feb. 6, 2015) (assault).[6]  However, a series of executive orders tolled New York's statutes of

---

[6]    Pursuant to N.Y. C.P.L.R. § 215, an action against a sheriff for assault or false imprisonment must be commenced within one year.  See Lalonde v. City of Ogdensburg, 2023 WL 2537626, at *27 (N.D.N.Y. Mar. 16, 2023).  In their motion, defendants assume N.Y. General Municipal Law § 50-i applies, rather than Section 215.  "Whether the statute of limitations outlined in N.Y. GML § 50-i(c) or NY CPLR § 215 applies depends upon who is the real party in interest."  Id.  "Where an individual was acting solely on his own behalf NY CPLR § 215 applies.  Where an individual is alleged to have been acting within the scope of his employment" with a municipality, however, the municipality "may be liable for his conduct and would thus be the real party in interest; in those circumstances, General Municipal Law § 50-i(c)

limitations from March 20 through November 3, 2020.  N.Y.C. Transit Auth. v. Am. Transit Ins. Co., 211 A.D. 3d 643, 643 (1st Dep't 2022); see Afanassieva v. Page Transp., Inc., 2022 WL 7205009, at *1 (2d Cir. Oct. 13, 2022) (citing N.Y. Comp. Codes R. & Regs. Tit. 9 §§ 8.202.67, 8.202.8 (2020)) (summary order).

Plaintiff's assault, false imprisonment, and NIED claims arise from Deputy Varbero's alleged wrongful conduct on March 2 and 3, 2019.  Assuming these claims accrued on March 3, 2019, and accounting for the tolling period, plaintiff had until January 15, 2021, to bring such claims against Varbero or the County.  However, he did not initiate this action until March 2, 2022—more than a year after the limitations period expired.  (See Doc. #1).

Accordingly, plaintiff's assault, false imprisonment, and NIED claims must be dismissed.

---

would apply."  Id.  Even if the one-year statute of limitations period under Section 215 were applicable to certain of plaintiff's state-law claims, such claims would be untimely for the same reasons his claims are untimely under Section 50-i.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's Fourth Amendment claims against Deputy Varbero shall proceed.  Further, plaintiff's Fourteenth Amendment procedural and substantive due process claims against Deputy Varbero shall proceed.

All other claims are dismissed.  Putnam County, Sheriff Langley, and Deputy Lombardo are dismissed as defendants in this action.

By June 6, 2023, Deputy Varbero shall file an answer to the amended complaint.  By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate Putnam County, Sheriff Robert L. Langley, and Deputy Sheriff Scott E. Lombardo as defendants in this action.

The Clerk is further instructed to terminate the pending motion.  (Doc. #25).

Dated:  May 23, 2023
      White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge